# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| FRANK RUSSO, Individually and on Behalf of All Others Similarly Situated,<br><br>v.<br><br>BJ INSPECTIONS, INC. | Case No.: 6:17-cv-00959<br><br>Collective Action (29 U.S.C. § 216(b))<br>Class Action (FED. R. CIV. P. 23) |

## CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Plaintiff Frank Russo brings this lawsuit to recover unpaid overtime wages and other damages under the Fair Labor Standards Act ("FLSA"), the Ohio Minimum Fair Wage Standards Act, O.R.C. §§ 4111, *et seq.*, ("the Ohio Wage Act"), and the Ohio Prompt Pay Act ("OPPA"), Ohio Rev. Code § 4113.15 (the Ohio Wage Act and the OPPA will be referred to collectively as "the Ohio Acts"), from Defendant BJ Inspections, Inc. ("BJ Inspections").

2. BJ Inspections is an oilfield service company offering inspection and managerial services to the oil and natural gas industry throughout the United States, including in Ohio. BJ Inspections, About, http://www.bjinspections.com/about-1.html (last visited Jul. 26, 2017).

3. Russo worked for BJ Inspections as a Utility Inspector during the relevant time period.

4. Russo and other workers like him were typically scheduled for 12 hour shifts, 7 days a week, for weeks at a time. However, these workers never received overtime for hours worked in excess of 40 in a single workweek.

5. Instead of paying overtime as required by the FLSA and the Ohio Acts, BJ Inspections paid Russo a day rate.

6. This class and collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## JURISDICTION AND VENUE

7. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

8. The Court has federal jurisdiction over the state law class action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d). The Court also has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## THE PARTIES

10. Russo worked for BJ Inspections during the relevant statutory time period as a Utility Inspector. His consent to be a party plaintiff is attached as Exhibit A.

11. The nationwide class of similarly situated workers paid a day rate with no overtime ("FLSA Class") consists of:

> **All current and former workers employed by BJ Inspections, Inc. in the past three years who were paid a day rate.**

12. Russo also brings this action on behalf of all similarly situated employees employed by BJ Inspections in Ohio ("Ohio Class"). These individuals worked in Ohio and were subjected to the same unlawful policy as Russo. The Ohio Class is properly defined as follows:

> **All current and former workers employed by BJ Inspections, Inc. in Ohio during the past three years who were paid a day rate.**

13. **BJ Inspections, Inc.** is a Pennsylvania corporation doing business throughout the United States, including in this District and in Ohio. BJ Inspections may be served by serving its registered agent for service of process, **Incorp Services, Inc., 3867 Plaza Tower Dr., 1st Floor, Baton Rouge, LA 70816.**

## COVERAGE UNDER THE FLSA

14. At all times hereinafter mentioned, BJ Inspections has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

15. At all times hereinafter mentioned, BJ Inspections has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

16. At all times hereinafter mentioned, BJ Inspections has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise have and have had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

17. At all times hereinafter mentioned, Russo and the Class Members were engaged in commerce or in the production of goods for commerce.

## FACTS

18. BJ Inspections provides a wide range of inspection and managerial services to the oil and natural gas industry, and maintains operations throughout the United States, including in Ohio.

19. Russo began working for BJ Inspections as a Utility Inspector in April 2017 and is still currently employed by them.

20. Over the statutory time period, BJ Inspections has employed numerous Putative Class Members throughout the United States of America. While exact job titles may differ slightly, these employees were subjected to the same or similar illegal pay practices for similar work.

21. BJ Inspections' inspection workers do not hire, fire, discipline, supervise, or exercise independent judgement or discretion.

22. The Putative Class Members' primary job duties include examining numerous phases of pipeline and related facilities construction, enforcing safety policies and company contract specifications, verifying that all systems are running properly, making recommendations to fix faulty components, and filling out reports.

23. The Putative Class Members conduct their day-to-day activities within designated parameters and in accordance with pre-determined standards and guidelines.

24. The Putative Class Members' activities are routine and largely governed by standardized plans and checklists created by BJ Inspections and/or its clients.

25. Every element of the Putative Class Members' jobs are predetermined for them by BJ Inspections and/or its clients.

26. The Putative Class Members' job functions are primarily manual labor/technical in nature, requiring little-to-no official training. Likewise, a college education is not required.

27. Russo and all the Putative Class Members worked similar hours and were uniformly denied proper overtime compensation as required by the FLSA and the Ohio Acts as a result of the same illegal pay practice.

28. All Putative Class Members were generally scheduled to work eighty-four (84) hours per workweek, but often worked more.

29. Specifically, BJ Inspections paid Russo and the Putative Class Members a day rate, regardless of the number of hours that they worked each day (or in a workweek), and failed to provide them with overtime pay for hours that they worked in excess of 40 hours in a workweek.

30. All of the Putative Class Members perform the same or similar job duties and are subjected to the same or similar policies and procedures which dictate the day-to-day activities performed by each person.

31. The Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay practice.

32. BJ Inspections' policy of failing to pay their employees, including Russo, overtime violates the FLSA and the Ohio Acts because these workers are, for all purposes, employees performing non-exempt job duties.

33. BJ Inspections' day-rate system violates the FLSA and the Ohio Acts because Russo and those similarly situated did not receive any overtime pay for hours worked over 40 hours each week.

**FLSA VIOLATIONS**

34. As set forth herein, BJ Inspections violated the FLSA by failing to pay Russo and the Putative Class Members overtime for hours worked in excess of 40 in a workweek. 29 U.S.C. § 207(a).

35. BJ Inspections knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Russo and the Putative Class Members overtime compensation. BJ Inspections' failure to pay overtime compensation and intentional misclassification of these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

36. Accordingly, Russo and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay, plus liquidated damages, attorney's fees, and costs.

**VIOLATION OF THE OHIO ACTS**

37. The conduct alleged violates the Ohio Acts (O.R.C. §§4111).

38. At all relevant times, BJ Inspections was and is subject to the requirements of the Ohio Acts.

39. At all relevant times, BJ Inspections employed Russo and each Class Member with Ohio state law claims as an "employee" within the meaning of the Ohio Acts.

40. The Ohio Acts require employers like BJ Inspections to pay employees at 1.5 times the regular rate of pay for hours worked in excess of 40 hours in any one week. Russo and each member of the Ohio Class are entitled to overtime pay under the Ohio Acts.

41. BJ Inspections has a policy and practice of failing to pay overtime to Russo and the other Ohio Class Members for hours worked in excess of 40 hours per workweek.

42. Russo and the Ohio Class Members seek unpaid overtime in an amount equal to 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

43. Russo and the Ohio Class Members also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by BJ Inspections, as provided by the Ohio Acts.

### CLASS AND COLLECTIVE ACTION ALLEGATIONS

44. Russo incorporates all previous paragraphs and alleges that the illegal pay practices BJ Inspections imposed on Russo were likewise imposed on the Putative Class Members.

45. Russo and all Class Members have been victimized by BJ Inspections' pattern, practice, and/or policy which is in willful violation of the FLSA and the Ohio Acts.

46. Many Class Members worked with Russo and reported that they were paid in the same manner and were not properly compensated for all hours worked as required by the FLSA and the Ohio Acts.

47. Thus, BJ Inspections imposed its illegal practice or policy on Russo and all Class Members regardless of any individualized factors.

48. Russo and all Class Members received a day rate, regularly worked in excess of 40 hours per week, and were not paid overtime compensation. Further, all Class Members were misclassified by BJ Inspections as exempt from the overtime requirements.

49. These employees are victims of BJ Inspections' unlawful compensation practices and are similarly situated to Russo in terms of relevant job duties, pay provisions, and employment practices.

50. BJ Inspections' failure to pay wages and overtime compensation at the rates required by the FLSA and the Ohio Acts result from generally applicable, systematic policy and/or practice which are not dependent on the personal circumstances of any Class Members.

51. Russo's experiences are therefore typical of the experiences of the Putative Class Members.

52. The specific job titles or precise job locations of the various Putative Class Members do not prevent class or collective treatment.

53. Russo has no interests contrary to, or in conflict with, the members of the Classes. Like each Putative Class Member, Russo has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

54. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

55. Absent this action, many Putative Class Members likely will not obtain redress of their injuries and BJ Inspections will reap the unjust benefits of violating the FLSA and applicable state labor laws.

56. Furthermore, even if some of the Putative Class Members could afford individual litigation against BJ Inspections, it would be unduly burdensome to the judicial system.

57. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

58. The questions of law and fact common to each of the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    (a) Whether BJ Inspections employed the Putative Class Members within the meaning of the applicable state and federal statutes, including the FLSA and the Ohio Acts.

    (b) Whether the Putative Class Members were properly classified as exempt from the overtime requirements;

    (c) Whether BJ Inspections' decision to not pay time and a half for overtime to the Putative Class Members was made in good faith;

    (d) Whether BJ Inspections' violation of the FLSA was willful; and

    (e) Whether BJ Inspections' day rate pay practices were applied uniformly across the nation to all Putative Class Members.

59. Russo knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective or class action.

60. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective and class action treatment.

## JURY DEMAND

61. Russo demands a trial by jury.

## RELIEF SOUGHT

62. WHEREFORE, Russo prays for judgment against BJ Inspections as follows:

    (a) For an order certifying class action(s) under Rule 23 for the purposes of the claims under Ohio law;

(b) For an order certifying this case as a collective action for the purposes of the FLSA claims;

(c) For an order finding BJ Inspections liable for violations of state and federal wage laws with respect to Russo and all Class Members covered by this case;

(d) For a judgment awarding all unpaid wages, liquidated damages, and/or penalty damages, to Russo and all Class Members covered by this case;

(e) For a judgment awarding Russo and all Class Members covered by this case their costs of this action;

(f) For a judgment awarding Russo and all Class Members covered by this case their attorneys' fees;

(g) For a judgment awarding Russo and all Class Members covered by this case pre- and post-judgment interest at the highest rates allowed by law;

(h) For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: ***/s/ Matthew S. Parmet***
_____
Richard J. (Rex) Burch
Texas Bar No. 24001807
*seeking admission pro hac vice*
Matthew S. Parmet
La. Bar No. 32855
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Telephone: (713) 877-8788
Telecopier: (713) 877-8065
rburch@brucknerburch.com
mparmet@brucknerburch.com

Michael A. Josephson
Texas Bar No. 24014780
*seeking admission pro hac vice*
Andrew W. Dunlap
Texas Bar No. 24078444
*seeking admission pro hac vice*
**JOSEPHSON DUNLAP LAW FIRM**
11 Greenway Plaza, Ste. 3050
Houston, Texas 77046
Telephone: (713) 352-1100
Telecopier: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Kenneth W. DeJean
La. Bar No. 4817
**LAW OFFICES OF KENNETH W. DEJEAN**
417 W. University Ave.
P.O. Box 4325
Lafayette, LA 70502
Telephone: (337) 235-5294
Telecopier: (337) 235-1095
kwdejean@kwdejean.com

**Attorneys for Plaintiffs**